## Chabrow's Estate.

Argued November 27, 1935. Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*R. M. Remick,* of *Saul, Ewing, Remick & Saul,* for appellant.

*William A. Gray,* with him *David H. Cohen,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 6, 1936:

In this proceeding it is sought to surcharge a guardian. When the situation developed by the testimony is looked at in the light of what it really is, i. e., one concerning a family, some of its aspects take on a different hue from that which they might bear if some of the parties were unrelated to the others. As observed by the court below, "This estate, together with a trust estate created by Penn Chabrow, grandfather of the minor beneficiaries, was part of a general family arrangement to care for the widow and children of Abraham N. Chabrow." Our surmise is, that the appellant, substituted guardian for these minor children in prosecuting this appeal, is acting with what it conceived to be required caution, to the end that hereafter, when its duties are termi-

nated, it shall not be called to account for anything which was existent when it assumed control of the minors' interests.

The matters brought to our attention, for which it is suggested surcharges should be made, are: (1) failure of the original guardian to pay taxes on properties covered by mortgages held by the guardian for his wards, where the guardian himself subsequently became the owner of an undivided interest in the properties; (2) failure to pay off the whole or part of the mortgages, the guardian having had cash in hand available for the purpose; (3) because losses on the investments are likely to occur.

The Chabrows, father and sons, were members of a partnership dealing in butter and eggs. Eventually the firm became bankrupt as a result of the business depression. At a time when they were operating successfully, one of the brothers purchased a property for $26,000. David Chabrow, one of the members of the firm and also guardian of the minor children of a deceased brother, Abraham, invested $15,000 of his wards' estate in a first mortgage on this property. A second mortgage for $5,000 was held by a building association and the rest of the consideration had been paid in cash by the purchaser. It is not contended that the investment in the first mortgage by the guardian was not warranted when made. Subsequently the property was conveyed to the partnership, because the partner who owned it had become indebted to the firm. Thereafter the property was deeded to a straw man who held title for the real owners. Interest on the mortgage was regularly paid until the year 1932. Thereafter the income from the property was not sufficient to meet it. The guardian took possession of the property and collected such rents as were available, realizing $1,045, which sum he devoted in its entirety to the support of his wards. No taxes on the property have been paid since December 31, 1928.

The guardian invested \$5,500 of his wards' funds in a first mortgage on another property. This mortgage was made by their grandfather. Like the first named property, this one too was conveyed to the partnership and later to a straw man. Interest on this mortgage was paid until August 24, 1932. No taxes have been paid since December 31, 1928. There was also a second mortgage on it. There is no contention that this investment was not amply secured when made.

The third investment of his wards' money made by the guardian was in a first mortgage for \$3,000. He placed \$1,500 in it and a like amount was contributed from a trust estate created by his father. This mortgage became in default and was foreclosed and title was taken by the guardian and trustee in the same proportion as the mortgage interests.

The record indicates that the partnership got into financial stress and that about the same time the father of the remaining partners died; in an attempt to relieve its embarrassment the partners, the guardian and his two brothers, conveyed to their mother certain properties and received from her as the consideration therefor \$31,000, which money had come into her hands as the proceeds of her husband's life insurance. It is complained that the guardian did not devote any part of this money to the payment of the taxes due on the properties covered by his wards' mortgages and in which properties he had a one-fourth ownership. His answer to this complaint is that the money was contributed by his mother to aid the general financial situation of the partnership and to benefit the entire family, by enabling the business of the firm to be carried on, and was devoted to the discharge of its pressing obligations, that his share, if he had an individual share, could not have been wisely expended as it is now argued it should have been, that the important thing was to try and keep the business going for the benefit of his wards and the other mem-

bers of the family whose livelihood depended upon it. Under these circumstances, we see no basis for a surcharge of the guardian. His ownership of a one-fourth interest in the properties was incidental to his membership in the partnership. This is not a case where a guardian loaned his ward's money to himself.

It is further argued that the guardian should have demanded and secured from the other owners, his partner's and immediate relatives, a contribution from the money they had received to pay the mortgages in full. Under the circumstances as shown by the record, no such duty rested upon him. It is further set up that because the mortgages became overdue, the guardian's retention of them was to all intents and purposes equivalent to a reinvestment of the minors' funds in the mortgages. This contention is most far fetched and has no basis in fact or law for support. As pointed out by the court below when the mortgages were originally taken by the guardian, he was not an owner of the real estate and there is no evidence that they were not amply secured. It was not shown that during the course of his holding of the mortgages, the guardian did not use judgment or exercise discretion or that he did not act in good faith. What happened was that he, like scores of thousands of other mortgage holders, was caught in the calamity of the depression, when income from mortgaged real estate dried up. The record shows that he and his brothers paid to the mother of the children for their support over $1,000 in excess of the net income from the properties.

The court correctly decided that the guardian should not be surcharged.

Decree affirmed. Costs to be paid out of the estate.